**David POPE, Petitioner,**

v.

**UNITED STATES POSTAL SERVICE, Respondent.**

No. 96–3290.

United States Court of Appeals, Federal Circuit.

June 5, 1997.

Stuart A. Abramson, Sea Cliff, NY, argued, for petitioner.

Robert P. Sindermann, Jr., Attorney, United States Postal Service, of Washington, DC, argued, for respondent. With him on the brief was R. Andrew German. Also with him on the brief was Frank W. Hunger, Assistant Attorney General, Civil Division, Department of Justice, of Washington, DC.

Before RICH, MAYER, and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

David Pope appeals from the May 29, 1996 order of the Merit Systems Protection Board (Board), Docket No. SE0752950425–I–1, 70 M.S.P.R. 593, which adopted the initial decision of the administrative judge sustaining Mr. Pope's reduction in grade for creating a hostile work environment. We vacate and remand.

I

Until his demotion, Mr. Pope served as Supervisor, Accounting Services, EAS–21, at the Anchorage, Alaska, office of the United States Postal Service (Postal Service). In June 1995, the Postal Service issued a notice proposing his removal on two separate charges: (i) misconduct creating a hostile work environment, and (ii) unacceptable/unprofessional conduct.

The first charge, creating a hostile work environment, was subsequently divided into nine specifications concerning Mr. Pope's conduct towards two subordinates, Ms. Bruning and Ms. Clevenger. These specifications included allegations that Mr. Pope would: touch and rub the head, neck, shoulders, and arms of Ms. Bruning; approach Ms. Bruning and Ms. Clevenger quietly from behind and stand so close that when they turned around their breasts would brush against his chest; tell Ms. Bruning that he would like to come into the shower with her and watch; and ask Ms. Bruning a variety of other inappropriate, suggestive questions.

The second charge, engaging in unacceptable/unprofessional conduct, was subsequently divided into five specifications. These specifications included allegations that Mr. Pope made a deal with another subordinate regarding her bid for a vacant position, disclosed his computer password to subordinates, and directed angry outbursts at employees.

In July 1995, Mr. Pope responded to the Postal Service's notice both orally and in a lengthy writing. After considering Mr. Pope's response and mitigating factors, the deciding official upheld the charges but reduced the penalty from removal to demotion (reduction in grade) to an EAS–16 supervisory position. In September 1995, Mr. Pope appealed this demotion decision to the Board.

II

The administrative judge conducted an evidentiary hearing during which testimony was taken from Mr. Pope and a number of subordinates including Ms. Bruning and Ms. Clevenger. Based on the evidence adduced, the administrative judge issued an initial decision

in which he sustained six of the nine specifications under the hostile work environment charge, but none under the unacceptable/unprofessional conduct charge. Based on Mr. Pope's supervisory authority, the administrative judge also presumed a nexus between the charged conduct and the efficiency of the service. Finally, the administrative judge considered the propriety of the penalty, given that many of the specifications were not sustained. The administrative judge determined that because the most significant specifications had been sustained, the penalty of reduction in grade was appropriate.

When the Board adopted the administrative judge's decision, Mr. Pope petitioned for review to this court pursuant to 28 U.S.C. § 1295(a)(9) (1994). We must affirm the Board's decision unless we find it:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law;

(2) obtained without procedures required by law, rule or regulation having been followed; or

(3) unsupported by substantial evidence.

5 U.S.C. § 7703(c) (1994); *Rosete v. Office of Personnel Management*, 48 F.3d 514, 516 (Fed.Cir.1995).

### III

■ As we have explained in the past, an agency must establish three things to withstand challenge to an adverse action against an employee. First, it must prove, by a preponderance of the evidence, that the charged conduct occurred. 5 U.S.C. § 7701(c)(1)(B) (1994). Second, the agency must establish a nexus between that conduct and the efficiency of the service. 5 U.S.C. § 7513(a) (1994); *Hayes v. Department of Navy*, 727 F.2d 1535, 1539 (Fed.Cir.1984). Third, it must demonstrate that the penalty imposed is reasonable. *See Douglas v. Vet-*

*erans Admin.*, 5 MSPB 313, 5 M.S.P.R. 280, 306–07 (1981).

Mr. Pope's lead argument is that the Postal Service failed to satisfy the first requirement of proving that the charged conduct occurred. He asserts that the charged conduct is "creating a hostile work environment," not simply the actions recited in the underlying specifications; and that although the administrative judge upheld several specifications, the Postal Service never proved that those incidents created a hostile work environment.[1] According to Mr. Pope, the actions he took towards Ms. Bruning and Ms. Clevenger did not create a hostile work environment.

The Postal Service responds that it need not prove that Mr. Pope's actions created a hostile work environment because our case law creates a presumption of harm once the agency has proven underlying actions of a sexual nature. In support of its position, the Postal Service cites our decision in *King v. Frazier*, 77 F.3d 1361, 1363–64 (Fed.Cir. 1996).

■ The Postal Service's position is off the mark because it misinterprets our precedent in this area of law. Our precedent makes clear that in certain situations, *once the charged misconduct has been proven* there exists a presumption that the proven misconduct harms the efficiency of the service. Sexual harassment is one such example; tardiness is another.[2] *King*, 77 F.3d at 1364; *Davis v. Veterans Admin.*, 792 F.2d 1111, 1113 (Fed.Cir.1986). This presumption, however, is directed to the second requirement that an agency must meet, *i.e.*, that the charged conduct harmed the efficiency of the service. This presumption does not in any way affect the agency's burden of proof on the charged conduct itself.

The Postal Service argues that, regardless, once it has proven that an employee engaged

1. The other charge, unacceptable/unprofessional conduct, is not part of this appeal.

2. When the charged misconduct is sexual harassment similar to that defined in the Equal Employment Opportunity Commission guidelines, an agency must prove that "the offensive conduct is based on the employee's sex, is unwelcome,

and is sufficiently severe or pervasive to interfere with the employee's job performance or to create an abusive work environment." *King v. Hillen*, 21 F.3d 1572, 1579–80 (Fed.Cir.1994). Only after it has made this proof may an agency rely on the presumption of harm to the efficiency of the service.

in actions of a sexual nature towards another employee, there should exist a presumption that those actions created a hostile work environment. In other words, the Postal Service argues that there should exist a double presumption for such cases: a first (new) presumption that the employee's actions created a hostile work environment, and a second (old) presumption that the hostile work environment harmed the efficiency of the service.

 We agree with the Postal Service that such a double presumption can exist in cases where the employee is charged with creating a hostile work environment through actions sexual in nature. This conclusion makes explicit what was implicit in our precedent, namely that certain actions of a sexual nature are presumed to harm the efficiency of the service *because* they create a hostile or abusive work environment. *See King,* 77 F.3d at 1364 (citing *Brook v. Corrado,* 999 F.2d 523, 527–28 (Fed.Cir.1993) and *Hayes,* 727 F.2d at 1539, for the proposition that harm to the efficiency of the service is presumed in cases where the employee's misconduct is so egregious that it speaks for itself); *cf. Cooper v. United States,* 226 Ct.Cl. 75, 639 F.2d 727, 729–30 (1980) ("We do not quarrel with the Government's finding that sexual misconduct adversely affects the employer-employee relationship."). In other words, the same kind and degree of sexual misconduct that gives rise to a presumption of harm to the efficiency of the service will also give rise to a presumption that it created a hostile work environment. We emphasize, however, that by creating a new presumption (that certain actions of a sexual nature create a hostile work environment), we are not creating a *per se* rule whereby an agency automatically prevails. Instead, we merely allocate burdens of production.

 Under this approach, once an employee initiates review of the agency action at the Board, the agency bears the burden of proving by a preponderance of the evidence that the employee engaged in actions of a sexual nature, *i.e.,* the specifications underlying the charge of creating a hostile work environment. If the agency does so, the Board may presume that those actions created a hostile or abusive work environment and that the hostile work environment harms the efficiency of the service. The appellant may rebut either presumption by producing evidence demonstrating that, on the facts of the particular case, the appellant's actions did not create a hostile work environment or did . not harm the efficiency of the service.[3] Unless the appellant does so, the agency's action should be sustained as long as the penalty imposed is reasonable.

██ We note that our resolution of this case is driven by the nature of the Postal Service's charge, namely "creating a hostile work environment." As we have explained in the past, an agency need not wait until an employee's misconduct rises to something akin to a sexual harassment violation. *Carosella v. United States Postal Service,* 816 F.2d 638, 642–43 (Fed.Cir.1987). Instead, an agency may take adverse action against any employee whose misconduct harms the efficiency of its service. Whatever misconduct an agency chooses to charge, however, must be proven by a preponderance of the evidence.

### IV

 We also address briefly Mr. Pope's remaining arguments. He argues that his due process rights were violated because the charges lacked specificity regarding dates, times, and places. We disagree. Due process requires that the charges in the notice be set forth "in sufficient detail to allow the employee to make an informed reply." *Brook,* 999 F.2d at 526. The notice given to Mr. Pope is quite detailed and clearly informed him of the charges as well as the evidence the Postal Service had in support. This notice provided Mr. Pope sufficient basis to file a lengthy written response in his defense. The Postal Service considered Mr. Pope's response and issued a letter of decision setting forth in

---

**3.** We note that throughout this process, the agency retains the burden of persuasion, *i.e.,* it must prove the charged conduct by a preponderance of the evidence. The presumption governs only the burden of producing evidence.

detail the reasons for the decision to demote him. Finally, the administrative judge required the Postal Service to break down the charges into multiple specifications, each directed to a specific act of misconduct. In light of the above, we agree with the Board that Mr. Pope's due process rights were not violated.

Mr. Pope also argues that the Board's credibility determinations are incorrect and are not supported by substantial evidence. In support of this argument, Mr. Pope recites inconsistencies among the agency's witnesses as to the frequency of his alleged actions. We are not persuaded. For each of the sustained specifications, the administrative judge simply found the testimony of either Ms. Bruning or Ms. Clevenger more persuasive than that of Mr. Pope. The administrative judge merely employed the testimony of other witnesses to corroborate the fact that Mr. Pope engaged in the actions recited in the sustained specifications, not for their testimony as to the frequency of those actions. As an appellate court, we are not in position to re-evaluate these credibility determinations, which are not inherently improbable or discredited by undisputed fact. *See Hambsch v. Department of Treasury,* 796 F.2d 430, 436 (Fed.Cir.1986); *Grubka v. Department of the Treasury,* 858 F.2d 1570, 1574 (Fed.Cir.1989). Accordingly, we decline Mr. Pope's invitation to upset the Board's credibility determinations.

Finally, Mr. Pope argues that the penalty of demoting him five grades was inappropriate given that many of the specifications were not sustained. The administrative judge was clearly aware of this issue and also considered Mr. Pope's long service with the Postal Service. Ultimately, however, the administrative judge concluded that the chosen penalty was appropriate given that the most significant specifications were sustained. We cannot disturb this conclusion in light of our highly deferential review on the issue. *See Parker v. United States Postal Serv.,* 819 F.2d 1113, 1116 (Fed.Cir.1987) (stating that we will not disturb the penalty chosen unless it is so harsh and unconscionably disproportionate to the offense as to amount to an abuse of discretion).

V

Because our creation of the second presumption represents a change in the law from that which existed during Mr. Pope's hearing before the Board, we remand this case to the Board for further proceedings. We do not tamper with the Board's conclusions sustaining certain specifications and rejecting others, nor do we tamper with its conclusion that there was harm done to the efficiency of the service. On remand, the proceedings should be limited solely to the issue of whether Mr. Pope's actions created a hostile work environment; the Board may presume that this is so, but Mr. Pope must be given the opportunity to rebut that presumption.

For the reasons explained above, the decision of the Board is vacated and the case is remanded for further proceedings consistent with this opinion.

*VACATED AND REMANDED.*