**CORRECTED : AUGUST 5, 2010**

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————————

**CAROL A. MCGACHEY,**
*Petitioner,*

**v.**

**DEPARTMENT OF THE AIR FORCE,**
*Respondent.*

———————————————

2009-3304

———————————————

Petition for review of the Merit Systems Protection Board in DA0752080356-I-1.

———————————————

Decided:  August 3, 2010

———————————————

GLENN D. MANGUM, Law Offices of Glenn D. Mangum, of San Antonio, Texas, argued for petitioner.

JACOB A. SCHUNK, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent.  With

him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and REGINALD T. BLADES, JR., Assistant Director.

———————————

Before LOURIE, BRYSON, and GAJARSA, *Circuit Judges*.

PER CURIAM.

Carol A. McGachey petitions for review of a decision by the Merit Systems Protection Board, which upheld a decision by the Department of the Air Force to remove Ms. McGachey from her position. We affirm.

I

Ms. McGachey, a registered nurse, worked as a Nurse Specialist in the Hauth Birthing Center at Lackland Air Force Base from 2002 through April 3, 2008. The agency proposed to remove her from her position based on three charges of misconduct.

The facts underlying the first charge were the following: At 4:00 a.m. on December 14, 2007, Ms. McGachey called her unit duty station to request sick leave for a migraine headache; when she called, she reached the night unit coordinator. Because Ms. McGachey's element leader was not on duty at that time, the night unit coordinator told her that she needed to contact her element leader to have her request approved. Ms. McGachey responded that she did not believe she had to call her element leader. Ms. McGachey then ended the call. She did not leave her telephone number, nor did she call her element leader or any other supervisor, either then or later. Instead, Ms. McGachey took medication and fell asleep for several hours. The agency treated those actions

as "failure to follow leave procedures and absent without leave" (the "AWOL charge").

The facts underlying the second charge were the following: A fellow nurse reported to Ms. McGachey's element leader that Ms. McGachey had used a computer and printer in the unit to print out an email relating to her work as a union representative. In response, the element leader initiated an investigation in which a systems administrator discovered that on December 28, 2007, Ms. McGachey had downloaded and modified union materials on her computer profile. The agency concluded that Ms. McGachey had violated the agency's policy concerning the use of government computers for non-official business. The agency characterized Ms. McGachey's use of the agency's computer system to access and store union materials as a "misuse of government property."

The facts underlying the third charge were the following: On January 26, 2008, the unit coordinator responsible for allocating patients to Ms. McGachey and other nurses on duty told Ms. McGachey to start the admission paperwork for a new patient. Ms. McGachey refused to follow that instruction on the ground that she was monitoring a sick patient and felt that she could not take on that additional duty and still provide adequate care to the first patient. The agency concluded that Ms. McGachey's actions constituted a "refusal to carry out assigned duties."

In the letter proposing her removal, the proposing official noted that Ms. McGachey had previously received a letter of reprimand for unauthorized absence (i.e., AWOL) and discourteous conduct in 2006, and a ten-day suspension for sleeping on duty and failing to carry out assigned duties in 2007. After Ms. McGachey was given an oppor-

tunity to respond to the charges, the deciding official sustained all three charges and terminated Ms. McGachey's employment. The deciding official found that the charges were "fully supported by the evidence" and that Ms. McGachey's removal was an appropriate punishment and was consistent with the penalty guidelines. In the removal notice, the deciding official noted two disciplinary actions that had been omitted from the agency's earlier notice: a verbal counseling in 2006 and a letter of counseling in 2007.

Ms. McGachey appealed the agency's decision to the Merit Systems Protection Board, challenging the evidence supporting each of the three charges, as well as the reasonableness of the penalty. The administrative judge who was assigned to the case held that the agency had failed to prove the charge of "refusal to carry out assigned duties," but that the remaining charges were supported by preponderant evidence. With respect to the AWOL charge, Ms. McGachey asserted that her actions were consistent with Article 13, section 11, of the collective bargaining agreement between the agency and her union ("the CBA") because that provision required only that she "call the duty station [if the supervisor was not available] and talk with whoever was at the duty station acting in the supervisor's place." However, the administrative judge found that both the unit policy and the CBA required Ms. McGachey to contact her supervisor. In addition, the administrative judge found that Ms. McGachey did not leave her telephone number and did not call her supervisor later in the day, and that those actions were contrary to the sick leave protocol mandated by the CBA. The administrative judge therefore sustained the agency's decision on that issue.

As for the "misuse of government property" charge, Ms. McGachey admitted that she accessed union materials using the agency's email system and that she stored those materials in her agency profile. Nevertheless, Ms. McGachey maintained that the CBA authorized her actions. The administrative judge disagreed. While recognizing that the CBA permits email correspondence between union officials and employee members, the administrative judge also found that the CBA does not "authorize[] the Union to use the agency's email and computer system to transmit Union documents to Union officials, or to store Union documents on the agency's computer system." Because Ms. McGachey used the agency's computer system to access and store union documents, contrary to a policy that restricted use to "official Government Business or a use Authorized by [the] Commander," the administrative judge sustained the agency's charge.

The administrative judge next discussed the agency's penalty choice and held that Ms. McGachey's removal was not unreasonable in light of the sustained charges. The administrative judge noted that the deciding official should not have listed the two disciplinary actions that were not included in the proposed removal letter, but accepted the deciding official's statement that she relied only on the letter of counseling and that she would have taken the same action even if the letter of counseling had not been considered. The administrative judge also credited the deciding official's testimony that Ms. McGachey's removal was warranted, even if only one or two of the charges were sustained. In upholding the agency's decision, the administrative judge focused on the AWOL charge and found (1) that Ms. McGachey was "clearly on notice" of the sick leave policy, (2) that "one of [her] prior disciplinary actions involved a charge of

AWOL," and (3) that her "conduct was intentional and raises a question concerning her potential for rehabilitation." As a result, the administrative judge determined that Ms. McGachey's "removal is not beyond the bounds of reasonableness." The full Board denied review of the administrative judge's decision, and Ms. McGachey now petitions for review by this court.

II

Ms. McGachey asserts that the Board erred in upholding the agency's decision with respect to the AWOL charge because her request for leave was in compliance with the CBA. Specifically, Ms. McGachey argues that because her supervisor was not on duty, the CBA required only that she make her request "to the person designated to act in the supervisor's place" and that the night unit coordinator was acting in the supervisor's place when she made her request. We disagree. The record shows that the night unit coordinator was not designated to act in the supervisor's place, and that unit coordinators do not have the authority to approve sick leave. Moreover, Ms. McGachey made no effort to contact the other element leader who was on duty and was acting as the designated alternate under the CBA. Ms. McGachey also admits that she did not leave her telephone number, as required by the CBA. Ms. McGachey argues that leaving her telephone number was unnecessary because that number was already listed on the recall roster. But regardless of whether she considered that step as necessary, the policy required Ms. McGachey to provide her telephone number and she failed to do so. In addition, contrary to the sick leave protocol under the CBA, the evidence showed that Ms. McGachey failed to contact her supervisor "as soon as feasible." Instead, she apparently decided that the call she had made was sufficient and that she did not need to

follow the other steps required to request sick leave. There is substantial evidence supporting the Board's conclusion that, after the night unit coordinator reminded Ms. McGachey of her responsibility to call her supervisor, Ms. McGachey intentionally disregarded the sick leave policy.

Ms. McGachey also asserts that the Board erred in upholding the charge of misusing government property. Specifically, she contests the sufficiency of the evidence offered by the agency and the Board's conclusion that her use was unauthorized. However, the systems administrator who investigated Ms. McGachey's profile provided documentary and testimonial evidence that Ms. McGachey's profile contained union materials modified on December 28, 2007, and Ms. McGachey admits to storing those materials on her profile. In addition, substantial evidence supports the Board's determination that the CBA permits union officials to use the agency's computer system only for certain purposes, and that her act of receiving the materials in question and then storing and modifying those materials on the agency's system was not the type of communication "between the Union officials to employee members" permitted by the CBA. The CBA required the agency to provide two computers and a printer for union use, which were located outside Ms. McGachey's unit. However, Ms. McGachey admitted that she used computers in the unit to access and store the union materials, rather than the resources provided for union business under the CBA. Substantial evidence therefore supports the charge of misusing government property.

III

Ms. McGachey also contends that the Board erred in upholding her removal because it was an unreasonable penalty. *See Pope v. U. S. Postal Serv.*, 114 F.3d 1144, 1147 (Fed. Cir. 1997). We have stated that "[i]t is a well-established rule of civil service law that the penalty for employee misconduct is left to the sound discretion of the agency." *Lachance v. Devall*, 178 F.3d 1246, 1251 (Fed. Cir. 1999). For that reason, when reviewing penalties imposed by an agency for a particular offense we "will not disturb a choice of penalty within the agency's discretion unless the severity of the agency's action appears totally unwarranted in light of all factors." *Id.*

Ms. McGachey asserts that her removal constitutes an abuse of discretion because the agency's penalty guidelines suggest a much lower penalty for a second AWOL offense (cause action 4), a second failure to request leave (cause action 5), or a first unauthorized use of property offense (cause action 21a). However, the agency classified each charge as a "cause action 20," a category for which the guidelines suggest removal as the maximum penalty. We have some doubt as to whether Ms. McGachey's actions were properly classified as a "cause action 20," especially with respect to the misuse of government property charge. That category is for offenses such as "[i]nsubordinate defiance of authority, refusal to comply with proper orders, [or] wanton disregard of directives or insolence," and that language appears to describe scenarios more extreme than in this case. The employing agency is principally responsible for interpreting its own penalty guidelines, however, and we decline to override the agency's decision to interpret those guidelines to

permit flexibility in the way the agency categorizes particular charges. Because the agency's application of its guidelines was not irrational, we cannot overturn the penalty chosen by the agency on the ground that it was based on a misapplication of those guidelines.

We regard the penalty imposed in this case to be quite harsh for the conduct at issue, particularly in light of the administrative judge's dismissal of the charge of refusal to carry out assigned duties. Nonetheless, we are constrained by the very narrow scope of our review of agency penalty decisions. Under the governing standard, when the agency makes clear, as it did here, that it would have imposed the same penalty based only on those charges that were upheld, we cannot overturn the agency's choice of penalty unless we conclude that the penalty was "totally unwarranted in light of all factors," *Lachance,* 178 F.3d at 1251, or "so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion," *O'Neill v. Dep't of Hous. & Urban Dev.,* 220 F.3d 1354, 1365 (Fed. Cir. 2000). Notwithstanding our discomfort with the harshness of the result in this case, we are not able to conclude that the penalty is so excessive as to satisfy that exacting standard, particularly with regard to the AWOL charge. There is substantial evidence supporting the Board's finding that Ms. McGachey intentionally violated the sick leave policy; moreover, she had been disciplined for an AWOL charge on a previous occasion. Both of those facts constitute aggravating factors under the circumstances. Therefore, despite our reservations about the severity of the penalty imposed in this case, we decline to overturn the Board's decision upholding the agency's removal decision.

## AFFIRMED

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CAROL A. MCGACHEY,**
*Petitioner,*

**v.**

**DEPARTMENT OF THE AIR FORCE,**
*Respondent.*

---

2009-3304

---

Petition for review of the Merit Systems Protection Board in DA0752080356-I-1.

---

GAJARSA, *Circuit Judge*, additional views.

I am in complete agreement with the conclusions and the judgment reached in this case and join the opinion. I must, however, note and emphasize the reservation expressed in the opinion. I am concerned about the severity of the penalty and the fact that each of the charges were classified as a "cause of action 20," with a penalty range of reprimand to removal even for the first offense. This seems to indicate that more than a mere personnel action was the underlying focus of this proceeding. The reasons for this classification were not developed or clearly stated. It is important for an agency not to be

biased towards its personnel or allow unstated reasons to be the cause and purpose of the removal action. But this court may not substitute its opinion in personnel matters of an administrative agency even if some might consider the action egregious. *United States Postal Service v. Gregory*, 534 U.S. 1, 6-7 (2001) (stating that the scope of review of administrative decisions under the arbitrary and capricious standard is narrow and the Board has wide latitude in fulfilling its obligation to review agency disciplinary actions).